# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JONATHAN SMITH,<br><br>  Plaintiff,<br><br>  v.<br><br>MARKSMAN SECURITY CORPORATION,<br><br>  Defendant. | Case No. 2:24-cv-01328-RFB-MDC<br><br>**ORDER** |

Before the Court are two motions to dismiss filed by Defendant Marksman Security Corporation. For the following reasons, the Court denies the first motion to dismiss (ECF No. 10) as moot, and it grants the second motion to dismiss (ECF No 18).

**I.   PROCEDURAL HISTORY**

Plaintiff filed his complaint on July 19, 2024. See ECF No. 1. A summons was issued on July 22. See ECF No. 3. Plaintiff filed a motion to extend time to complete service of process. See ECF No. 8. This was granted and service was ordered to be completed by November 16, 2024. See ECF No. 9. Defendant filed a motion to dismiss on December 2. See ECF No. 10. The summons was returned as executed on December 4. See ECF No. 13. A response to the Motion to Dismiss was filed on December 16. See ECF No. 15. A reply was filed on December 23. See ECF No. 16.

On December 23, Plaintiff filed the First Amended Complaint. See ECF No. 17. On January 6, 2025, Defendant filed another motion to dismiss. See ECF No. 18. On January 14, Defendant filed a motion to vacate the early neutral evaluation session. See ECF No. 19. This was granted. See ECF No. 20. Plaintiff filed a Response to the second motion to dismiss on January 21. See ECF No. 21.

On January 23, 2025, Plaintiff's counsel, Trevor Hatfield, filed a motion to withdraw. See

ECF No. 22. The same day, Plaintiff filed a motion to stay the case. See ECF No. 23. On January 27, Defendant filed a reply to the second motion to dismiss. See ECF No. 24. On March 3, the Court issued a Minute Order granting the Motion to Withdraw and Motion to Stay. See ECF No. 25. The case was stayed for 30 days, until April 2, 2025, in order for Plaintiff to engage new counsel. See id. On April 14, the Court set a motion hearing for June 26, 2025. See ECF No. 26.

The Court's Order follows.

## II.     FACTUAL ALLEGATIONS

The following facts are taken from the Amended Complaint. Plaintiff is a white man. He is married to an African American woman. Plaintiff was hired by Defendant in September 2019. Plaintiff's most recent job title was Armed Security Officer. In or around November 2019, Defendant hired a new manager, an African American woman. She supervised Plaintiff. Plaintiff does not recall her name. Plaintiff was harassed by this manager who made statements that Plaintiff was racist. Once she discovered that Plaintiff's wife is African American, she accused Plaintiff of being racist against African American men. The manager conveyed private information of a confidential nature regarding Plaintiff to coworkers. Plaintiff complained to Defendant's Human Resources representative regarding this manager.

On or around September 2022, Plaintiff was called into a meeting with corporate to address "different protected issues that Plaintiff's subordinates had shared with Plaintiff regarding race issues and offensive comments that they were subjected to." Subsequently, Plaintiff was transferred and demoted. Plaintiff was terminated when he declined to accept this transfer and demotion.

## III.     LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

## IV. DISCUSSION

### A. Failure to Serve

Defendant first argues that Plaintiff failed to meet the service deadline imposed by this Court. It is true that Defendant did not file the Summons Returned Executed until December 4, but the document states that it was executed on November 8. Plaintiff was given until November 16. Therefore, Plaintiff served Defendant within the time provided by the Court.

### B. Failure to State a Claim

Plaintiff has failed to specify what type of claim he is pursuing under Title VII. He alleges a cause of action under Title VII for "discrimination" and a cause of action in violation of "Nevada Statutory Protections." Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* claim of discrimination, under Title VII and NRS 613, Plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett–

1  Packard Co., 358 F.3d 599, 604 (9th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411
2  U.S. 792, 802 (1973)). "[I]ndividuals are similarly situated when they have similar jobs and display
3  similar conduct," including "engag[ing] in problematic conduct of comparable seriousness."
4  Vasquez v. Cnty. of L.A., 349 F.3d 634, 641 (9th Cir. 2003).

5  Nevada's anti-discrimination statute, NRS 613.330, "is almost identical" to Title VII. See
6  Apeceche v. White Pine Cnty., 615 P.2d 975, 977 (Nev. 1980). Accordingly, the Nevada Supreme
7  Court "has long looked for guidance from the federal courts in employment cases." Anderson v.
8  Ruppco Inc., 281 P.3d 1150, at 3 (Nev. 2009) (unpublished table decision) (citing Pope v. Motel
9  6, 114 P.3d 277, 280 (Nev. 2005); Apeceche, 615 P.2d 975, 977–78).

10  The Court finds that Plaintiff's claim fails on the second and fourth prongs. Plaintiff has
11  failed to adequately allege that he was qualified as a supervisor at the time of his termination. He
12  does not discuss his job performance in his first amended complaint. He does not allege that he
13  was receiving satisfactory performance reviews or adequately performing at his job. Instead, the
14  First Amended Complaint states he was called into a meeting because of offensive comments *he*
15  made to subordinates. Plaintiff's First Amended Complaint also fails to allege that other employees
16  were treated differently than him. He alleges that he was called into a meeting due to offensive
17  comments he made and eventually demoted. He does not allege that other similarly situated
18  supervisors made offensive comments and were not demoted.

19  Overall, Plaintiff has failed to allege that his termination was unlawful discrimination due
20  to his protected status as a white man. He does not allege that he was qualified as a supervisor. He
21  does not allege that other supervisors were not demoted when he was. Instead, the First Amended
22  Complaint provides that he was terminated because he made offensive comments to his
23  subordinates and refused to accept a transfer. The Court therefore grant's Defendant's motion to
24  dismiss.

25  To the extent Plaintiff is bringing a hostile work environment claim related to the alleged
26  comments calling him "racist," such a claim also fails. To state a hostile work environment claim,
27  a plaintiff must allege that: (1) the defendants subjected him to verbal or physical conduct based
28  on a protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was sufficiently

severe or pervasive to alter the conditions of his employment and create an abusive working environment. See Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008). A plaintiff must demonstrate "the conduct at issue was both objectively and subjectively offensive: he must show that a reasonable person would find the work environment to be 'hostile or abusive,' and that he in fact did perceive it to be so." Dawson v. Entek Int'l, 630 F.3d 928, 938 (9th Cir. 2011). To determine whether conduct was sufficiently severe or pervasive to violate Title VII, courts look at all the circumstances, "including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993) (finding that whether an environment was hostile or abusive is determined by looking at the totality of the circumstances; "[t]hese may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance").

Plaintiff's First Amended Complaint includes claims that he was called a "racist" by an unnamed supervisor. First of all, the Court finds that calling Plaintiff "racist" is not racial on its face and is not related to Plaintiff's race. Although such comments may have been unwelcome, Plaintiff has not alleged that the comments related to a protected characteristic. See e.g., Squitieri v. Piedmont Airlines, Inc., No. 3:17CV441, 2018 WL 934829, at 3 (W.D.N.C. Feb. 16, 2018) (finding that "alleged harassment was based on her co-workers' perceptions that she was racist, not because of her race"); Trinh Huynh v. O'Neill, No. Civ. A. 3:01CV445, 2002 WL 32507837, at 5 (E.D. Va. May 29, 2002) ("Although the comments and actions the Plaintiff alleges were unwelcome, there is simply no basis to conclude that they were racially-motivated or even motivated by anything more than intra-office conflict among individuals who did not like each other."). Second, even if calling Plaintiff "racist" could be construed as verbal conduct based on a protected characteristic, it was not objectively offensive as a matter of law. Plaintiff fails to sufficiently allege that these comments interfered with his ability to perform his duties. Nor were any alleged comments that he was racist severe or pervasive within the meaning of the law. See

Vasquez, 349 F.3d at 642 (finding that limited racial comments across a significant time period did not create a hostile work environment). In fact, "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to create an actionable claim under Title VII. See Faragher, 524 U.S. at 788 (internal quotation marks and citation omitted). Here, there are no allegations providing repeated examples of unwelcome conduct and no allegations that these comments occurred over an extended period of time. Because the comments were limited and occurred over an indefinite period of time, they do not state a plausible hostile work environment claim under Title VII. See Nichols v. Azteca Rest. Enters., 256 F.3d 864, 872 (9th Cir. 2001) ("The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'") (citation omitted).

Plaintiff does not appear to allege that there was unlawful retaliation, but to the extent that he is seeking to bring such a claim, this claim also fails. To establish a prima facie case of retaliation, a plaintiff must prove (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. See Bergene v. Salt River Project Agric. Improvement and Power Dist., 272 F.3d 1136, 1140–41 (9th Cir. 2001). Once established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons are a pretext for retaliation. See id. An employee engages in protected activity in this context "when []he opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." Westendorf v. W. Coast Contractors of Nev., Inc., 712 F.3d 417, 422 (9th Cir. 2013).

Plaintiff alleges that he spoke to an unnamed human resources representative regarding his manager. He does not specifically allege that he complained to the HR representative about alleged discrimination. Even assuming that he did discuss the comments from the unnamed manager calling him "racist," the Court finds that such comments are not related to a protected status. Regardless, even if Plaintiff spoke to the HR representative regarding these comments and these comments did concern his protected status, such that he was engaging in protected activity, his claim still fails. Plaintiff alleges that he was demoted from his position, which is an adverse

1  employment action. However, he fails to allege a causal connection between his alleged protected
2  activity and the adverse employment action.
3        He alleges that the comments from the unnamed manager were in November 2019. He then
4  alleges that he was called into a meeting almost two years later and was eventually terminated.
5  Cases that accept mere temporal proximity—between an employer's knowledge of protected
6  activity and an adverse employment action—as sufficient evidence of causality uniformly hold
7  that the temporal proximity must be "very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268,
8  273–274 (2001); see also Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1068 (9th Cir. 2002)
9  (finding that a gap of ten months between the protected action and the termination did not give rise
10  to an inference of causation). Two years is too extended a gap for the Court to find that Plaintiff
11  has sufficiently pled a causal connection between the HR meeting and his demotion. See e.g.,
12  Wharton v. Azenta Inc., No. 3:23-CV-05863-DGE, 2024 WL 1209736, at 2 (W.D. Wash. Mar. 21,
13  2024) ("To the extent Plaintiff's complaint alleges the temporal proximity between his DLI claim
14  and his termination pleads a causal link, the nearly two year gap between the filing of his DLI
15  claim and his termination is insufficient to state a claim.").
16        Further, the First Amended Complaint alleges that the September 2022 meeting concerned
17  offensive comments he made to his subordinates. He does not allege that the meeting had anything
18  to do with the unnamed manager or his report to HR in 2019. Plaintiff has failed to allege that his
19  eventual demotion was related to the HR meeting two years prior.
20        **C. Leave to Amend**
21        To the extent that pleadings can be cured by the allegation of additional facts, the plaintiff
22  should be afforded leave to amend. Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv.
23  Inc., 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). "Dismissal without leave to amend is
24  proper if it is clear that the complaint could not be saved by amendment." Kendall v. Visa U.S.A.,
25  Inc., 518 F.3d 1042, 1051 (9th Cir. 2008). A district court's discretion to deny leave to amend is
26  "particularly broad where a plaintiff previously has amended the complaint." World Wide Rush,
27  LLC v. City of L.A., 606 F.3d 676, 690 (9th Cir. 2010).
28        The Court will not provide leave to amend. Plaintiff has already amended his complaint

once. There are no additional facts that Plaintiff has proffered that could establish sufficiently pervasive conduct to constitute a hostile work environment claim. Plaintiff has solely alleged limited instances where he was called "racist." Such comments are not related to a protected status and do not rise to the level of severe and pervasive conduct. Further, Plaintiff cannot amend the complaint in order to reduce the two-year gap between the alleged protected activity and his termination in order to establish a retaliation claim. Finally, Plaintiff has alleged no facts suggesting that similarly situated individuals were not terminated despite offensive conduct on par with his conduct.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** Defendant's Motion to Dismiss (ECF No. 18) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (ECF No. 10) is **DENIED** as moot.

The Clerk of Court is instructed to close this case.

**DATED:** September 29, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**